UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER MITCHELL,** | § § § | |
| **Plaintiff,** | § § | |
| v. | § § | CIV NO. 4:08-cv-1135 |
| **J.V. INDUSTRIAL COMPANIES, LTD,** | § § § | |
| **Defendant.** | § | |

### MEMORANDUM AND ORDER

On July 24, 2008, after hearing argument from the parties, this Court granted Defendant's Motion to Compel Arbitration. On July 25, 2008, after reviewing the papers in the case, the Court determined that its Order should be vacated, and asked the parties to answer two questions and provide further briefing. The Court has now received the additional briefing, and determines that its initial decision was correct. Defendant's Motion, Doc. no. 3, is therefore **GRANTED**. The Court will compel arbitration and will dismiss Plaintiff's claims.

### I.   BACKGROUND

Plaintiff filed a complaint in state court alleging race discrimination, presumably under either Title VII of the Civil Rights Act of 1964 or the Texas Commission on Human Rights Act. Defendant removed the case, and subsequently filed a Motion to Compel Arbitration.

At the July 24, 2008 hearing on Defendant's Motion, the Court determined that there was a valid arbitration agreement between the parties and that Plaintiff's claim for race discrimination was within the scope of the arbitration agreement. *See, e.g., Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20 (1991); *Garrett v. Circuit City Stores, Inc.,* 449 F.3d 672, 675 (5th Cir. 2006) ("Following *Gilmer,* courts have regularly held that claims by

1

employees arising under federal and state employment statutes are subject to the FAA and mandatory arbitration."); *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003) (describing two-step inquiry courts should follow when deciding whether to compel arbitration). Plaintiff admitted he signed an arbitration agreement in 2005 that required all claims related to or arising out of his employment to be arbitrated. There was no allegation that the agreement was unconscionable or otherwise unenforceable. The arbitration agreement explicitly included statutory discrimination claims.

At the hearing, Plaintiff argued, however, that he was subsequently terminated and then re-hired, and that upon re-hire, he did not sign an arbitration agreement. After further consideration of the original arbitration agreement's language, the Court asked the parties to provide additional briefing to explain the sequence of events, whether Plaintiff explicitly refused to sign an arbitration agreement when re-hired, and whether Plaintiff's claims arose out of events that took place before or after he was re-hired.

In response to the Court's questions, Plaintiff maintains that he was terminated sometime between 2005 and 2006. He alleges that he accepted new employment with Defendant sometime in 2006, and at that time did not sign a new arbitration agreement. Plaintiff asserts that the events alleged in the Complaint took place between February 2007 and October 2007, as reflected in the EEOC Charge. Plaintiff explains that he was once again terminated in 2007, and when he sought employment again with Defendant in 2008, he explicitly refused to sign an arbitration agreement. Plaintiff provide no actual evidence or sworn statements in support any of his contentions.

Defendant's version of the events is slightly different and more detailed, but does not contradict Plaintiff's account. Defendant first explains that Plaintiff was an at-will employee

2

and, according to Victoria Scott, a human resources manager for Defendant's Southwest Region, Plaintiff was employed as a temporary field employee. (Scott Aff. 1.) Scott explains that Defendant hires employees to work on a particular contract, and after the contract task is complete, the employees are "separated" until another job becomes available; employees are offered the opportunity to return to work for Defendant when additional work becomes available. (*Id.*) Scott further states that employees are required to complete various forms including an employment application and arbitration agreement when they are initially hired, and are not allowed to work until they have a completed arbitration agreement on file. (*Id.* at 1-2.) Affiant Julie McBeath, who worked as an administrative assistant in Defendant's human resources office from October 2006 through August 2007, adds that, when a former employee seeks to be re-hired for a project, McBeath would check to see what updates to these forms were needed. (McBeath Aff. 1.) If the employee already had an arbitration agreement on file, HR did not require the employee to sign another agreement upon re-hire.[1] (*Id.*)

Defendant maintains that, when Plaintiff was re-hired in 2007, he was asked to sign an update to his employment agreement, but that Defendant did not ask him to sign a new arbitration agreement. (*See* McBeath Aff. 2.) Defendant points out that the employment agreement that Defendant signed in both 2005 and 2007 provides as follows in bold print:

> I understand that, as condition of employment [sic], the Company has a mandatory arbitration policy for all disputes arising between me and the Company. I understand and agree that, in return for the Company's consideration of any application and possible hire of me, my submitting this application, or, if offered, acceptance of employment will constitute my agreement to arbitrate any disputes that arise from or relate in any way to my employment or application for employment with the Company.

---

[1] McBeath further states that business records indicate that she processed Plaintiff's 2007 application, but she does not specifically recall doing so. (McBeath Aff. 2.) McBeath claims, however, that she has no recollection of any employee ever specifically refusing to sign an arbitration agreement, and that no person was allowed to be assigned to work or be hired if he did not complete the forms provided. (*Id.*)

3

(Employment Agreement, Scott Aff. 5.)

**II.    ANALYSIS**

Defendant maintains, first, that the arbitration agreement that Plaintiff signed in 2005 explicitly provides that it will cover any claims arising from or related to any future employment with Defendant. Defendant argues, second, that even if the language of the 2005 arbitration agreement cannot be construed to encompass all future periods of employment, Plaintiff was on notice of the arbitration requirement from the 2005 arbitration agreement and the 2005 and 2007 employment contracts. Defendant contends that, by signing all three documents, and by accepting employment, Plaintiff was therefore bound to arbitrate all claims even if he did not sign an additional arbitration agreement in 2007.

After review of the language of the 2005 Arbitration Agreement, the Court agrees with Plaintiff that it does not clearly encompass all future periods of employment following termination.[2] The arbitration agreement states that it applies to any "claims relating to his/her being considered for employment and subsequent employment, if any." (Arbitration Agreement, Ex. C.) Construing the language in its context, it appears to require arbitration of claims related to the application process and any potential employment that might grow out of that application process, and does not clearly extend to any subsequent period of employment. Thus, if Plaintiff had been terminated after signing the 2005 arbitration agreement and, upon subsequent rehire, explicitly refused to sign another arbitration agreement, and if Defendant had waived the arbitration requirement as a result of that refusal, arbitration of claims arising out of the subsequent employment would not necessarily be required by virtue of the 2005 agreement. That is not the scenario presented in this case, however.

---

[2] Indeed, examination of this provision after the July 24 hearing is what prompted the Court to request further briefing.

4

Instead, the facts of this case require the Court to compel arbitration. Plaintiff's claims arose between February 2007 and October 2007. The allegations at issue in this case, therefore, occurred before Plaintiff alleges that he explicitly refused to sign another arbitration agreement in 2008. When Plaintiff was re-hired by Defendant in either 2006 or 2007, he was not asked to sign another arbitration agreement. Nevertheless, Plaintiff did sign an employment agreement that explicitly stated, in conspicuous language, that acceptance of employment constituted an agreement to arbitrate any disputes that arose from or related in any way to his employment. Furthermore, the Arbitration Agreement, allegedly in place at all times between 2005 and 2008, stated that the agreement would be "effective upon notice to the Applicant/Employee of its terms, regardless of whether it is signed by either Agreeing Party" and that "Applicant's/[Employee's] submission of documentation for employment consideration and/or performing services for [Defendant] with knowledge of this Agreement shall constitute acceptance of it terms." (Arbitration Agreement, Ex. C.)

To determine whether an agreement to arbitrate exists the Court applies state law. *See, e.g., Hadnot v. Bay, Ltd.*, 344 F.3d 474, 476 (5th Cir. 2003). The Texas Supreme Court has held that arbitration agreements are enforceable upon notice of the employer's arbitration policy. As the Texas Supreme Court explained in *In re Dallas Peterbilt, LTD., LLP*:

> An employer may enforce an arbitration agreement entered into during an at-will employment relationship if the employee received notice of the employer's arbitration policy and accepted it. . . . When determining whether an employee received notice of a binding arbitration agreement, our cases do not confine that "notice analysis" to the underlying agreement, but to all communications between the employer and employee.

196 S.W.3d 161, 162 (Tex. 2006). Furthermore, "[a]n at-will employee who receives notice of an employer's arbitration policy and continues working with knowledge of the policy accepts the terms as a matter of law." *Id.* at 163; *see also Ford v. Lehman Bros., Inc.*, No. H-07-2693, 2007

5

WL 4437165, at *3 (S.D. Tex. Dec. 18, 2007) ("The Fifth Circuit has held that arbitration agreements in employment applications are enforceable; the agreement to arbitrate is formed when the employee signs the application and begins work." (citing *Hadnot.*, 344 F.3d at 477)). The Texas Supreme Court has also held that, even where a plaintiff refuses to sign an arbitration agreement, she may be bound by it if the unsigned arbitration agreement states that the employee is bound by its provisions by continued employment, and the plaintiff had notice of that provision. *See In re Dillard Dept. Stores, Inc.*, 198 S.W.3d 778 (Tex. 2006).

Here, as was the case in *In re Dallas Peterbilt*, Plaintiff was put on notice of Defendant's arbitration policy when he signed the 2005 agreement and when he signed the 2005 and 2007 employment agreements, both of which provided that beginning or accepting employment would automatically require him to arbitrate all disputes arising out of or related to his employment. Because Plaintiff was on notice that acceptance of employment constituted agreement to submit all dispute to arbitration, and because federal discrimination claims clearly fall within the scope of the arbitration agreement, the Court will compel Plaintiff's claims to arbitration.[3]

### III.  REQUEST FOR STAY

Plaintiff has also asked the Court to stay the case pending arbitration instead of dismissing it. Although other Circuits have found that Section 3 of the Federal Arbitration Act requires a Court to stay litigation pending arbitration, *see, e.g., Lloyd v. HOVENSA, LLC.*, 369 F.3d 263 (3d Cir. 2004), the Fifth Circuit has held that "[t]he weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration," *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). The

---

[3] The Court disagrees with Plaintiff's assessment that the agreement is illusory because it does not bind Defendant to arbitrate.

Court will therefore dismiss Plaintiff's lawsuit, because all of the claims before the Court must be submitted to arbitration.

## IV. CONCLUSION

Defendant's Motion to Compel Arbitration, Doc. No. 3, is hereby **GRANTED**. Plaintiff's claims are **DISMISSED.**

**IT IS SO ORDERED.**

**SIGNED** this 11th day of August, 2008.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL
FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY
EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT